UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:25-CV-00039-EBA

SHARI BESSETTE, PLAINTIFF,

V.   **MEMORANDUM OPINION & ORDER**

FRANK BISIGNANO,
*Acting Commissioner of Social Security*, DEFENDANT.

*** *** *** ***

### INTRODUCTION

Plaintiff, Shari Bessette, appeals the Social Security Commissioner's denial of her application for Social Security Disability Insurance Benefits (SSDI) under Title II and Supplemental Security Insurance (SSI) under Title XVI of the Social Security Act. [R. 1]. Bessette asserts that the Commissioner's decision was not based on substantial evidence as required by 42 U.S.C. § 405(g). [R. 11 at pg. 3]. Bessette and the Commissioner filed briefs in support of their respective positions, [R. 11; R. 13; R. 14], so this matter is ripe for review. For the reasons discussed below, the Court will affirm the Commissioner's decision.

### FACTS AND PROCEDURAL HISTORY

Sheri Bessette was born on February 16, 1984, and was approximately 38 years old on the date the application was filed. [R. 10-2 at pg. 37]. The records for this case indicate that she has at least a high school diploma and previously worked as head nurse. [*Id*. at pgs. 36-37]. Unfortunately, Bessette suffers from several medical conditions, including cervicalgia, low back pain with sciatica, right shoulder pain, right hip pain, bilateral knee pain, bilateral ankle pain,

bilateral foot pain, chronic pain syndrome, fibromyalgia, migraine headache, obstructive sleep apnea, obesity, adjustment disorder, major depressive disorder, unspecified depression, generalized anxiety disorder, and unspecified anxiety disorder. [*Id*. at pg. 28].

On October 27, 2022, Bessette protectively filed an application for supplemental security income, alleging disability beginning June 1, 2018. [*Id*. at pg. 26]. However, Bessette's claims were denied initially on March 10, 2023, and again upon reconsideration on May 12, 2023. [*Id*.]. Bessette then requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held before ALJ Jonathan Stanley on December 5, 2023. [*Id*.]. Following the hearing, ALJ Stanley determined that Bessette is not disabled under section 1614(a)(3)(A) of the Social Security Act. [*Id*. at pg. 38]. Bessette subsequently requested a review of ALJ Stanley's decision by the Social Security Administration's Appeals Counsel, but they declined to review the decision. [R. 11 at pg. 4]. Because the Appeals Counsel declined review, ALJ Stanley's decision became the Commissioner's final decision, which is subject to review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Now, having exhausted all administrative remedies, Bessette seeks judicial review of ALJ Staney's decision. [R. 1].

## STANDARD OF REVIEW

### A.

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*,

966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[1] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, an ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing

---

[1] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

**B.**

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Thus, Flowers bears the burden of establishing the severity of her impairments and that she had greater limitations than the ALJ imposed. *Her v. Comm'r of Soc.*

*Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Id*.

## ANALYSIS

### I.

In her appeal, Bessette argues that the ALJ Stanley erred in failing to properly evaluate whether her migraines equate to Listing 11.02, specifically paragraph B or D. [R. 8 at pg. 20]. Step 3 of the five-step analysis to determine whether a person is disabled within the meaning of Title II involves consideration of the listings. "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, "if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id*. (citing *Yuckert*, 482 U.S. at 141 (if an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabling, the evaluation proceeds to the fourth step") (collecting cases)). However, it is "uncommon" for a person with a primary headache disorder to demonstrate the equivalent to the symptoms listed in 11.02. SSR 19-4, 2019 WL 4169635, at *7. Bessette carries the burden of proving that her impairment met "all of the specified medical criteria" for the listing, or medically equaled "all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 530-31 (emphasis in original).

Bessette argues that her migraines are the medical equivalent of a dyscognitive seizure within the meaning of 11.02B or D. [R. 11 at pg. 8]. Listing 11.02B and D provides in relevant part as follows:

> 11.02 *Epilepsy*, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
> B. Dyscognitive seizures (see 11.00H1B) occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>> 1. Physical functioning (see 11.00G3a); or
>>
>> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>
>> 3. Interacting with others (see 11.00Gb(ii)); or
>>
>> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>
>> 5. Adapting or managing oneself (see 11.00G3B)(iv)).

20 C.F.R. Pt. 404, Subpt, P, App.1, Listing 11.02. Headaches can qualify as disabling under 11.02 even if the claimant does not have seizures. SSR 19-4P, 2019 WL 4169635 at *7. In making this determination, courts consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example…drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations.)

*Id*.

Here, in determining that Bessette's headaches did not equate to Listing 11.02, ALJ Stanley explained:

> There is no listing in the Listing of Impairments for headache disorders. However, a primary headache disorder may equal a listing in the Listing of Impairments. SSR 19-4p states that a primary headache disorder may equal listing 11.02 for dyscognitive seizures. Medical Expert evidence is necessary to make this finding. In this case, there is no medical expert evidence, or other evidence, indicating that the [Plaintiff's] migraines equal Listing 11.02. Furthermore, there is (no evidence)/the evidence does not show under Listing 11.02(B) (showing) dyscognitive seizures occurring at least once every two weeks for three consecutive months despite adherence to treatment with marked limitation in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself. Accordingly, the [Plaintiff's] migraines do[] not equal Listing 11.02.

[R. 10-2 at pg. 29].

In her brief, Bessette does not dispute ALJ Stanley's statement that there is no medical evidence in the record finding that her headaches equal Listing 11.02. [R. 11 at pg. 10]. Moreover, Bessette acknowledges that under the agency's rulings to successfully demonstrate that she was disabled based on a medical equivalence during step 3, the record must contain one of the following:

1. A prior administrative medical finding from [a medical consultant] or [a psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the [Appeals Counsil's] medical support staff supporting the medical equivalence finding.

[R. 11 at pg. 10 (citing SSR 17-2p, 2017 WL 3928306, at *3)]. Instead, Bessette argues that in this case, no doctor considered whether her migraines equated to Listing 11.02. [*Id*.]. Before making a finding that her headaches were not equivalent, Bessette argues that ALJ Stanley should have sought evidence from a medical expert. [*Id*.]. Failure to do so, according to Bessette, was error. [*Id*.].

The Commissioner responded arguing that there is no such requirement to make a finding that a claimant's impairments are not medically equivalent to a listing. [R. 13 at pg. 3]. In articulating its argument, the Commissioner first cites *Cooper*, which held:

> In this case, the ALJ specifically found that Cooper "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[,]" including Listing 1.04. (Tr. 20). Thus, under SSR 17-2p, because the ALJ found that the evidence did not reasonably support a finding that Cooper's impairments medically equaled Listing 1.04(A), she was *not* required to first obtain medical expert evidence to support that finding, nor was she required to specifically articulate the bases for that conclusion.

*Cooper v. Comm'r of Soc. Sec.,* No. CV 18-12611, 2019 WL 2240711, at *5 (E.D. Mich. Apr. 8, 2019), *report and recommendation adopted by*, 2019 WL 2208151 (E.D. Mich. May 22, 2019) (collecting cases). Additionally, the Commissioner cites *Willis* to advance its argument. [R. 13 at pg. 4]. The Court in *Willis* held that "the ALJ was precluded from finding medical equivalency in the absence of a similar finding made by a state agency consultant at the initial or reconsideration level or a medical expert at the hearing level." *Willis v. Comm'r of Soc. Sec.*, No. 5:24-CV-01503-DCN, 2025 WL 2055270, at *13-14 (N.D. Ohio July 23, 2025), *report and recommendation adopted by*, 2025 WL 2402706 (N.D. Ohio Aug. 19, 2025).

In her Reply, Bessette argues that *Cooper* and *Willis* do not apply in this case. [R. 14 at pg. 2]. However, Bessette's arguments are unpersuasive. The caselaw is clear that an ALJ may only find medical equivalence if the record contains supportive medical opinion evidence supporting that conclusion. SSR 17-2p, 2017 WL 3928306, at *3. Additionally, if the ALJ "believes the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment" there is no requirement that the ALJ obtain medical expert evidence. *Id*.; *see also Marvin v. Comm'r of Soc. Sec.*, No. 17-330, 2018 WL 4214339, at *3, n. 3 (W.D. Mich. Aug. 10, 2018) (SSR 17-2p "has clarified that an ALJ is not required to obtain a medical

expert's opinion before making a finding that an individual's impairment do not meet or equal a listing impairment"). In fact, when finding that an impairment is not medically equivalent, an ALJ is not even required to "articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4.

Here, none of the state agency consultants made findings supporting medical equivalence. [R. 13 at pg. 4 (citing R. 10-3)]. Further, in Bessette's brief she concedes that she "does not dispute the ALJ's statement that there is no [medical opinion] evidence in the administrative record finding that the Plaintiff's headaches equal Listing 11.02." [R. 11 at pg. 10]. Without such evidence, ALJ Stanley could not have made a finding that her migraines were medically equivalent to 11.02. *See* SSR 17-2p, 2017 WL 3928306, at *3. Additionally, as discussed above, Bessette's argument that ALJ Stanley was required to obtain medical expert evidence before making a determination that her migraines were *not* medically equivalent is not supported by case law. *Id*.; *see also Marvin*, 2018 WL 4214339, at *3, n. 3.

Moreover, Bessette appears to make an argument that neurologist Dr. Jeffrey Frank's treatment notes satisfy the requirements of SSR 17-2p. Bessette states that the "record contains prima facie evidence that the Plaintiff's headaches satisfy every element of SSR 19-4p." [R. 11 at pg. 11]. She cites Dr. Frank's treatment notes contained in the record, arguing that they demonstrate that her migraines were medically equivalent to Listing 11.02. [*Id*. at pgs. 11-15]. However, as discussed above, Bessette conceded that the record lacks the medical opinion evidence required by SSR 17-2p for a medical equivalence finding. [R. 11 at pg. 10]. Therefore, this argument is without merit.

Finally, Bessette makes an argument that ALJ Stanley "conflated Listing 11.02B with Listing 11.02D. This is because the ALJ purports to compare [Bessette's] symptoms to the elements of Listing 11.02B. In doing so, however, the ALJ recites the elements of Listing 11.02D." [R. 11 at pg. 9]. Bessette argues that this mistake warrants remand. [*Id.*]. However, in the section that Bessette cites, ALJ Stanley is explaining that his decision that the migraines are not medically equivalent to Listing 11.02 rests on the lack of medical opinion evidence in the administrative record. [*See* R. 10-2 at pg. 29]. As discussed above, because there is a lack of medical opinion evidence, Bessette's migraines could not have been medically equivalent to Listing 11.02B *or* D. Therefore, this mistake does not warrant remand.

## CONCLUSION

Thus, after reviewing the record, the Court finds that ALJ Stanley's decision was supported by substantial evidence. Therefore, the Commissioner's final decision will be **AFFIRMED**. A separate judgment will follow.

Signed February 10, 2026.



Signed By:
*Edward B. Atkins* EBA
**United States Magistrate Judge**